**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDEE M.,[1]<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 5:20-cv-01885-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

## INTRODUCTION

On December 4, 2017, Plaintiff filed applications for benefits under Titles II and XVI of the Social Security Act, alleging disability beginning on July 21, 2014. (Administrative Record ("AR") 15.) Following denial of her applications initially and on reconsideration (AR 128-131, 141-147), a hearing was held before an Administrative Law Judge ("ALJ"). (AR 33-57.) Thereafter, the ALJ issued an unfavorable decision on March 17, 2020, finding that Plaintiff suffered from severe impairments consisting of "degenerative disc disease, carpal tunnel syndrome,

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

migraine, ischemic heart disease, schizoaffective disorder, and obsessive-compulsive disorder" but that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (AR 18.) The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") for light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> stand[ing] and walk[ing] must be limited to four hours during the eight hour workday[.] In addition, climbing, stooping, bending at the waist, kneeling, crouching, bending at the knees, and crawling must be limited to occasionally. Further, handling (gross manipulation) and fingering (fine manipulation) with the bilateral upper extremities must be limited to frequently. Within the assigned work area, there must be less than occasional seldom to rare exposure to concentrated extreme cold, heat, vibration, fumes, odors, dust, gases, ventilation, and hazards, such as machinery and heights. Assigned work must be limited to simple, unskilled tasks with an SVP of one or two learned in thirty days or less or by a brief demonstration. The assigned work must have minimal change in the tasks assigned. In addition, the assigned work must be performed primarily independently not as a member of a team or crew. Finally, the assigned work must require no more than occasional brief intermittent contact with coworkers and supervisors and no contact with the public.

(AR 20.)

The ALJ determined that Plaintiff was capable of performing her past relevant work as an assembly production worker. (AR 25.) Therefore, the ALJ ruled that Plaintiff was not disabled. (AR 26.) The Appeals Council denied Plaintiff's request for review. (AR 1-2.)

Plaintiff filed a Complaint in this Court for judicial review pursuant to 42 U.S.C. § 405(g). In accordance with the Court's case management order, the parties have filed briefs in support of their pleadings. This matter is now ready for decision.

## DISPUTED ISSUES

1. Whether the ALJ provided legally sufficient reasons for discounting the opinion of Plaintiff's therapist, Tiffany Knowlton, MA, LMFT.
2. Whether the matter should be remanded for further administrative proceedings based on new and material evidence.
3. Whether the ALJ provided legally sufficient reasons for discounting Plaintiff's allegations of "mental dysfunction."

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

///

///

## DISCUSSION

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for implicitly rejecting the opinion of Plaintiff's treating therapist, Tiffany Knowlton, MA, LFMT, because the ALJ failed to mention Ms. Knowlton's November 3, 2018 opinion in the ALJ's decision. (ECF No. 18 at 2-7.) The Commissioner argues that the ALJ's failure to mention Ms. Knowlton's opinion was harmless error because the ALJ assessed limitations in the RFC consistent with Ms. Knowlton's opinion, and that the new regulations do not require the ALJ to use "specific and legitimate reasons" to justify rejecting a treating medical source's opinion. (ECF No. 19 at 1-3.)

### A. Ms. Knowlton's November 3, 2018, Opinion

The administrative record reveals that Ms. Knowlton began treating Plaintiff on April 23, 2018. (AR 158.) Ms. Knowlton had treated Plaintiff in 18 sessions by November 3, 2018 and planned to continue to treat Plaintiff on a weekly basis. (AR 158.) In a letter dated November 3, 2018, Ms. Knowlton stated that Plaintiff was being treated for Bipolar I Disorder with Psychotic Features and opined that this disorder severely impacts Plaintiff's ability to function in all areas including employment. (AR 158.) Ms. Knowlton stated Plaintiff presents a high level of agitation that makes it difficult for her to maintain appropriate social interactions. (AR 158.) Ms. Knowlton opined that Plaintiff's mood swings manifest as aggression and place Plaintiff at risk of having a psychotic episode. (AR 158.) Ms. Knowlton noted that this aggression has led Plaintiff to lose previous employment. (AR 158.)

### B. The ALJ's Decision

In reaching her decision, the ALJ employed the five-step sequential process to determine whether Plaintiff was disabled within the meaning of the Act. (AR 17-26.) The ALJ stated that the record supports a finding of schizoaffective and obsessive-compulsive disorders as severe impairments. (AR 23.) In summarizing the mental health evidence, the ALJ discussed an initial mental health assessment Plaintiff

attended on April 23, 2018. (AR 23.) This session was with Ms. Knowlton. The ALJ cites to the place in the record where Ms. Knowlton's treatment notes from this session are found but does not mention Ms. Knowlton's name. (AR 23, citing AR 604-607.) The ALJ noted that Plaintiff was irritable in the initial treatment session, did not want to be around other people, experienced hallucinations, was anxious, and had limited judgment and poor insight. (AR 23, citing AR 604-607.) The ALJ also referenced Ms. Knowlton's treatment notes from Plaintiff's initial examination, which stated that Plaintiff was oriented during the examination, her appearance was neat, her intelligence was average, her memory intact, her thought content normal, and she denied delusions. (AR 23, citing AR 643.)

The ALJ also referred to the treatment notes of a treating psychiatrist, Merlyn Scoggin, M.D., which stated that Plaintiff herself reported trouble concentrating, anhedonia, impulsivity, low energy, compulsions, and obsessive behavior. (AR 23, citing AR 668, 678.) The ALJ found that Plaintiff's mental impairments support the mental limitations set out in the RFC and that no further limitations were warranted. (AR 23.) The ALJ noted that during Plaintiff's treatment session with Dr. Scoggin, Plaintiff reported hallucinations of two boys, who she believed were "good spirits." (AR 23.) The ALJ noted that Plaintiff's mental status examinations performed during her physical examinations were "frequently unremarkable" and that Plaintiff had no emergency department visits or inpatient admissions for mental health treatments. (AR 23.)

Finally, the record contains Ms. Knowlton's opinion of Plaintiff's condition dated November 3, 2018 (AR 158), but the ALJ did not mention, give weight to, or assesses the credibility or consistency of this opinion when determining Plaintiff's limitations or formulating Plaintiff's RFC. (*See* AR 18-27.)

**C. Relevant Law**

In assessing an RFC, an ALJ must consider all relevant evidence in the record, including medical records and "the effects of symptoms, including pain, that are

reasonably attributable to the medical condition." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). In reaching conclusions based upon medical evidence, an ALJ must discuss significant and probative medical evidence and, if rejected or discounted, explain why such evidence is rejected or discounted. *See id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (holding federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding ALJ must discuss significant and probative evidence and explain why it was rejected).

The rules for the evaluation of medical evidence at the administrative level have been revised for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff filed her application on December 4, 2017, it is governed by the revised rules. The new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2).

Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2),

416.902(j)(1). While the ALJ will articulate how she considered the most important factors of supportability and consistency, an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). Further, where a medical source provides multiple opinions, an ALJ is not required to articulate how she considered each individual opinion but may address that medical source in a single analysis of the relevant factors set forth above. 20 C.F.R. § 416.920c(b)(1).

The Ninth Circuit has repeatedly held that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reasons where the record contains a contradictory opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Plaintiff contends that this standard survives the March 27, 2017 rules revisions and that the ALJ is still bound to provide "clear and convincing reasons" or "specific and legitimate" reasons for rejecting a medical opinion. (ECF No. 18 at 3-7.) The Commissioner argues that the standard set out by the Ninth Circuit does not survive the rule revisions and are therefore not applicable. (ECF No. 19 at 1 n.1.) The Ninth Circuit has not yet addressed whether or how the new regulations alter analysis of the adequacy of an ALJ's reasoning. Thus, it is not clear whether the Ninth Circuit precedent requiring an ALJ provide "clear and convincing" or "specific and legitimate reasons" for rejecting a treating source's medical opinions remains viable. *See Allen T. v. Saul*, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sep. 11, 2020) ("The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing'

or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy.").[2]

Nevertheless, the Commissioner's new regulations still require the ALJ to explain his or her reasoning and to specifically address how he or she considered the supportability and consistency of the medical opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c. As always, the ALJ's reasoning must still be free of legal error and supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Thus, even assuming that the Ninth Circuit's more stringent requirements are inapplicable here, the Court must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to the physicians' opinions and whether the reasons were supported by substantial evidence. *See Thomas S.*, 2020 WL 5494904, at *2.

**D. Analysis**

Plaintiff argues that the ALJ erred by failing to mention Ms. Knowlton's November 3, 2018 opinion in the written decision. While the ALJ cites or references Ms. Knowlton's treatment notes from other sessions, at no point does the ALJ mention Ms. Knowlton's November 3, 2018 opinion, let alone evaluate the consistency or supportability of it. The Commissioner concedes that the ALJ did not mention this opinion (ECF No. 19 at 2), and the ALJ's failure to acknowledge the opinion in any discernable way is a strong indication that the ALJ failed to consider it. This was error. *See Conklin v. Colvin*, 2016 WL 5791648, at *5 (E.D. Cal. Oct. 3, 2016) ("The ALJ's lack of consideration [of a medical opinion] makes it difficult for the court to conduct its review of the final decision of the Commissioner and violates the ALJ's duty to evaluate all of the medical opinion evidence in the record."); *Marsh*

---

[2] As a general matter, this Court must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *See Allen T.*, 2020 WL 3510871, at *3 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-982 (2005)).

8

*v. Colvin*, 792 F.3d 1170 (9th Cir. 2015) (holding that an ALJ errs when they do not mention a treating physician's opinion); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion…he errs."); *Dabney v. Comm'r of Soc. Sec.*, 2020 WL 5569787 (W.D. Wash. Sep. 17, 2020) (finding an ALJ's failure to discuss a medical opinion to be a serious error).

In response, the Commissioner argues that any error was harmless because the limitations set out in the RFC adequately capture the limitations in the November 3, 2018 opinion. (ECF No. 19 at 2-3.) The Ninth Circuit has held that an ALJ's failure to mention a treating medical opinion is harmless if it is "inconsequential to the ultimate nondisability determination" and that "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). More recently, the Ninth Circuit has stated that there may be some flexibility in finding an ALJ's error to be harmless, but "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Marsh*, 792 F.3d at 1173. In her November 3, 2018 opinion, Ms. Knowlton stated that Plaintiff's "most prevalent symptom is a high level of agitation making it particularly difficult to maintain appropriate social interactions." (AR 158.) In formulating the RFC, the ALJ limited Plaintiff to simple work that "must be performed primarily independently not as a member of a team or crew…[and] must require no more than occasional brief intermittent contact with coworkers and supervisors and no contact with the public." (AR 20.)

While these limitations may adequately account for Plaintiff's agitation and difficulties in social interactions, they do not fully address other limitations in Ms. Knowlton's November 3 opinion. For instance, Ms. Knowlton stated that she was treating Plaintiff for Bipolar I Disorder with Psychotic Features and that Plaintiff was on the "severe end of the diagnostic spectrum." She opined that Plaintiff experienced

mood swings which manifested as aggression and that Plaintiff was at risk of a psychotic episode. (AR 158.) The ALJ does not mention Ms. Knowlton's Bipolar I with Psychotic Features opinion or the opinion regarding Plaintiff's mood swings, aggression, or risk of psychotic episodes. (*See* AR 20-24.) Therefore, it appears that the ALJ did not attempt to assess these aspects of Ms. Knowlton's opinion in formulating the RFC. While the Commissioner's counsel provides their view of how Ms. Knowlton's opined limitations could possibly be read into the RFC, the interpretation of medical opinion evidence and how it factors into a claimant's RFC is a matter left solely to the ALJ, *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), and the ALJ has not provided any indication as to how she considered or incorporated the November 3, 2018 opinion. Given the nature of the functional limitations to which Ms. Knowlton opined[3] and the ALJ's silence as to the supportability and consistency of these opinions, the Court is unable to conclude that the ALJ's RFC determination adequately captured Ms. Knowlton's findings. *See Conklin*, 2016 WL 5791648, at *5 (holding that the ALJ's failure to address the "vague functional limitations" opined by a treating physician was reversible error because the Court is prohibited from either speculating as to how the ALJ incorporated the limitations or the ALJ's reasons for rejecting them.) Accordingly, the Court cannot "confidently conclude" that the error was harmless. *See Stout*, 454 F.3d at 1056.

## REMEDY

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of

---

[3] In a mental impairment questionnaire dated January 17, 2020, Ms. Knowlton provided a further opinion regarding Plaintiff's limitations. For example, she opined that Plaintiff suffers from extreme limitations in five categories, including managing herself in the workplace, and opines that Plaintiff would be likely be absent from work at least four days per month. (ECF No. 18-1 at 2-3.) Because that questionnaire was not before the ALJ, however, she could not have considered it.

benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record is not fully developed, and factual issues remain outstanding. Issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.[4] It is not the Court's

---

[4] In light of this conclusion, the Court declines to resolve Plaintiff's remaining claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

intent to limit the scope of the remand.

DATED: 7/1/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE